Filed 8/23/16  In re D.D. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D.D. et al., Persons Coming Under the Juvenile Court Law. | C081001 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RACHEL B.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD234279, JD236078) |

Rachel B., mother of the minors, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395 [further undesignated statutory references are to this code].)  Mother contends the juvenile court erred in failing to apply the beneficial parental relationship exception to termination of parental rights and argues reversal is required.  We affirm.

1

## FACTS

The Sacramento County Department of Health and Human Services (Department) filed a petition in January 2014 alleging D.D., age 5, was at risk of physical harm due to mother's substance abuse, domestic violence, and the death of an infant sibling while in mother's care. D.D. was detained and placed with relatives. The juvenile court sustained the petition and mother was offered reunification services. Mother participated in services, made progress, and D.D. was returned to her care under a family maintenance program in August 2014.

Mother initially did well in family maintenance, caring for D.D. and her new baby and remaining clean and sober. By March 2015 the Department suspected mother had relapsed into drug use. Mother was having difficulty completing her programs and caring for the minors. By May 2015 the Department was concerned about the minors' safety while in mother's care and custody because her housing was unstable, she was leaving the minors in the care of others, she was not drug testing as required, and she was not cooperating with the family maintenance program. D.D. was beginning counseling and appeared somewhat guarded. D.D. also was guarded with the social worker, appearing to have been coached by mother when asked about reported incidents, but when confronted with the truth, admitting it.

In June 2015 the Department filed a section 387 petition to remove D.D. from mother's care and a section 300 petition to remove the infant G.L. as well. The report for the jurisdiction/disposition hearing on the petitions recommended denial of further services for mother. The juvenile court sustained both petitions, terminated services as to D.D., denied services to mother as to G.L., and set a selection and implementation (§ 366.26) hearing.

The minors were placed with a paternal cousin of D.D. Mother continued to have twice weekly supervised visits with the minors. D.D.'s therapist informed the social

worker that it was important to D.D. that he continue to have contact with mother and that he became upset when he was unable to do so.

The assessment for the section 366.26 hearing concluded that both one-year-old G.L. and seven-year-old D.D. were adoptable based upon their physical, emotional, behavioral, and developmental characteristics. D.D. did display some negative behavior after visits with mother, but the caretakers were able to redirect him. Mother consistently visited the minors and there were no concerns about the visits themselves. An addendum filed December 7, 2015, stated mother had been recently arrested for felony possession for sale of controlled substances, entered a guilty plea, and had been sentenced to three years' informal probation.

The contested hearing commenced with a stipulation that D.D.'s therapist told the social worker that D.D.'s behaviors of defiance and aggression had decreased since his placement with the relative caretakers and the therapist was considering discharging him from therapy. The therapist further stated that D.D. was upset when visits with mother did not occur and that he looked forward to visits but did not often ask to speak with mother on the telephone. The therapist believed it was important for D.D. to have continued contact with mother because he had experienced a lot of loss in his life.

At the section 366.26 hearing in December 2015 the family service worker who supervised visits testified she had no concerns about mother's visits with the minors. Mother was affectionate, played with the minors, and brought fun activities to visits. Mother's last visit had been in November; visits had not restarted because she was in custody and had not contacted the family service worker to schedule visits since being released from custody.

D.D. testified he liked visits. He said that he wanted to live with mother and would feel sad if he could not.

Following argument, the court issued its ruling. The court found both minors were likely to be adopted based on their own characteristics and because they were in a

3

placement that wanted to adopt them. The court framed the remaining issue as "whether or not the parent-child relationship is so significant that the children should maintain the parental relationship as opposed to being adopted." The court stated there was little evidence of a parent/child relationship between mother and G.L., and the quality of that relationship was that of a friendly visitor. D.D. recognized mother as his mother and wanted to live with her, but the question was what was best for the seven-year-old minor. Mother continued to have issues with drugs and her recovery, and as a result, D.D. had not had a stable home for many years. The court concluded there might be some detriment to D.D. in severing mother's parental rights, but the detriment did not overcome the benefit to D.D. of a permanent and stable home. The court adopted the recommended findings and orders and terminated mother's parental rights.

## DISCUSSION

Mother argues reversal is required because the juvenile court failed to apply the beneficial parental relationship exception to avoid termination of parental rights. We disagree.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights. (*In re Melvin*

4

*A.* (2000) 82 Cal.App.4th 1243, 1252; *In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372-1373; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.)

Termination of parental rights may be detrimental to the minor when: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; see *In re C.F.* (2011) 193 Cal.App.4th 549, 555.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

Mother has established the first element of the exception in that she maintained contact through consistent visitation with the minors. Further, the evidence showed that the contact was positive insofar as limited visitation time would allow.

As to G.L., the minor only lived with mother for six months and was in relative placement thereafter until the section 366.26 hearing was held six months later. During the time when G.L. was in mother's custody, mother was leaving the minors with various caretakers and could not have established a sufficient parental relationship during that period. As a result, subsequent visitation could only have maintained a "friendly visitor" relationship between G.L. and mother. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 468.) Mother did not establish that a beneficial parental relationship existed between her and G.L., and the juvenile court properly terminated mother's parental rights as to G.L.

D.D. presents a somewhat different case. There is no question there was a parental relationship between mother and D.D. That relationship was marred by the effects of neglect and domestic violence in the home as well as by mother's manipulation of the minor by coaching him on the responses she expected of him when speaking to the social worker. The minor did express a desire to live with mother but also reacted negatively to visits. The strength and quality of the parent-child relationship between mother and D.D. showed there would be some detriment to the minor if mother's parental rights were severed. However, his positive response to the structure and stability of the relative placement made it clear that the benefit of ongoing contact with mother was outweighed by the benefit to the minor of adoption into a safe and stable environment where his needs could be consistently met. Mother did not establish that termination of her parental rights would result in great harm to D.D. The juvenile court properly found the exception did not apply to either child.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                        _____RAYE_____, P. J.



We concur:



_____BLEASE_____, J.



_____DUARTE_____, J.


6